UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Cody Prudente, as Personal Representative of the Estate of John Prudente, Jr., deceased; <br><br> Sandra Prudente; and <br><br> John Prudente, Sr., <br><br>         Plaintiffs, <br><br> v. <br><br> Mary Hamilton, individually and in her official capacity as a City of Mandan Police Officer; <br><br> Joshua Scherr, individually and in his official capacity as a City of Mandan Police Officer; <br><br> Dominic Hanson, individually and in his official capacity as a City of Mandan Police Officer; <br><br> Peter Czapiewski, individually and in his official capacity as a Lieutenant of City of Mandan Police; <br><br> David Raugust, individually and in his official capacity as a Sergeant of City of Mandan Police; and <br><br> City of Mandan, <br><br>         Defendants. | Civil No: 1:22-cv-00024 <br><br> **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' RULE 56(d) MOTION** |

Defendants submit this Memorandum in Opposition to the Plaintiffs' Rule 56(d) Motion.

## INTRODUCTION

On November 24, 2023, plaintiffs submitted a Rule 56(d) Motion. (ECF Doc. 41). The plaintiffs also submitted a Memorandum in support of that motion. (ECF Doc. 41-1.) In addition, affidavits of the plaintiffs' counsel, John Prudente Sr. ("John Sr.") and Sandra Prudente were submitted. (See ECF Docs. 41-2, 41-3, & 41-4.).

The crux of the plaintiffs' argument is the suggestion that while John Prudente Jr. ("John Jr.") was resisting arrest, Sgt. Raugust continued to utilize a chokehold even after John Jr. was handcuffed. Plaintiffs argue that the use of a chokehold or other "significant force" on a suspect who is handcuffed and not resisting violates the 4th Amendment. (See ECF Doc. 41-1 at 3.). For the reasons outlined below plaintiffs' motion should be denied.

## STATEMENT OF FACTS

On February 8, 2020, John Jr. fled a traffic stop, resisted arrest, and assaulted officers. During this interaction with Mandan police officers, John Jr. became unresponsive and was later pronounced dead. Two years later this action was filed on February 8, 2022. This action has been pending for almost 22 months. During that timeframe, plaintiffs have not requested, nor attempted, to take any depositions of any of the defendants in this matter.

On October 16, 2023, after this matter had been pending for 20 months, defendants filed a Motion for Summary Judgment. (ECF Doc. 35.) Plaintiffs now attempt to create facts in an attempt to delay this Court from reviewing and ruling on Defendants' Motion for Summary Judgment.

**LEGAL ARGUMENT**

The standard for summary judgment was outlined in Defendant's Memorandum in Support of Motion for Summary Judgment. (See ECF Doc. 36.). In their motion, plaintiffs correctly outline the standard under Rule 56(d) Federal Rules of Civil Procedure for delaying the decision on the summary judgment motion in order to conduct additional discovery. It is clear that the party seeking additional evidence must show three things. First, that they have set forth in affidavit form specific facts they hope to elicit from further discovery. Second, that the facts sought actually exist. Third, that the sought-after facts are essential to resist the summary judgment motion. See Toben vs. Bridgestone Retail Operations LLC, 751 F. 3d 888, 895 (8th Circuit 2014) (quoting California ex rel. Cal Dep't of Toxic Substances Control v. Campbell, 138 F. 3d 772, 779) (9th Cir 1998)). The court made it quite clear that a party cannot simply set forth facts that they "hope to elicit from further discovery." Id. The district court has wide discretion in considering a Rule 56(d) Motion. GEICO Cas. Co. v. Isaacson, 932 F. 3d 721, 726 (8th Circuit 2019).

In an attempt to create these facts, plaintiff's memorandum asserts "Sandra and John Sr. allege that Sgt. Raugust continued to utilize a chokehold on John Jr. until he became unconscious, despite the fact that he was handcuffed and no longer resisting." (See ECF Doc. 41-1 at 3.). Additionally, the affidavit of plaintiff's counsel asserts "John Prudente Sr. and Sandra Prudente were both present at the scene. Both allege that officers continued to use excessive force, despite John Jr. being handcuffed and no longer resisting. Specifically, John Prudente Sr. and Sandra Prudente allege that Sgt. Raugust continued to use a chokehold on John Jr. well after he was handcuffed behind the back." (See ECF Doc. 41-2 at 1.). These assertions are not supported.

A review of the affidavit of Sandra Prudente demonstrates that plaintiffs' counsel's assertion both in her affidavit and in the supporting memorandum are not accurate. The affidavit of Sandra Prudente indicates that, as she approached the scene the officer would not let her through. (See ECF Doc. 41-4 at 1.) Sandra Prudente was told she could not see her son. Her affidavit then indicates that, after she made her way up the driveway and stood by the garage, she saw Ernie (John Jr.) lying face down on the ground unresponsive. (Id.) Sandra's affidavit accurately reflects the fact that she was not present at the scene during the altercation. The acknowledgment that she was not at the scene during the altercation is the same testimony she provided to investigating officers on the day of the incident. In particular, Sandra Prudente informed Special Agent Droske that "Sandra Prudente was present just after the altercation concluded and John Prudente Jr. was on the ground in handcuffs." (See Exhibit 1, BCI Case Report Number BCI 120-00074-2 at DEFENDANTS 0300.)

Although both plaintiffs' counsel's affidavit and the supporting memorandum suggest to this court that both Sandra and John Sr. allege that they saw officer Raugust with a chokehold on John Jr. after being handcuffed, that is not an accurate representation to this court. Indeed, Sandra Prudente's own affidavit submitted to this court does not support the assertion.

Turning to the affidavit of John Sr., it does, in fact, assert "that same time, Officer Raugust had Ernie in a choke hold. Ernie was handcuffed and yelling that he could not breathe but officer Raugust just kept squeezing harder and harder." (See ECF Doc. 41-3 at 2.) The assertions in his affidavit must be placed in context.

The complaint filed in this action does not outline any assertion that a chokehold was utilized after John Jr. was placed in handcuffs (See ECF Doc. 1 at ¶ 20-23.). Paragraph 20 of the complaint outlines in detail the claimed usage of tasers to attempt to subdue John Jr. Paragraph 21 of the complaint asserts that Raugust pinned John Jr. using his chest and applying his body weight in order to place the handcuffs on. Paragraph 22 of the complaint asserts that, while handcuffed, John Jr. yelled several times that he was unable to breathe. Nowhere does the complaint assert that Officer Raugust continued to use a chokehold after handcuffs were placed on John Jr.

The interview of John Sr. on the day of the incident also fails to include any assertion of the utilization of a chokehold following placement of handcuffs on John Jr. John Sr. asserted that Raugust used a chokehold while they were fighting on the ground. However, nowhere does it suggest this occurred after placement of handcuffs. (See Exhibit 2, BCI report 120-0074-1 at DEFENDANTS 0076.). Indeed, that interview with John Sr. was recorded. A review of that recording does not reflect any specific assertion that utilization of a chokehold occurred after handcuffs were in place. (See Exhibit 3, DEFENDANTS 0291.)

John Sr.'s affidavit also notes that he drove to the location of the initial traffic stop. His affidavit states that he "gave Ernie a nod and circled the block." John Sr. then alleges he watched the remainder of the stop. (See ECF Doc. 41-3 at 1). He asserts that he watched both officers talk with Ernie, walk back to their cars, and stand in front of their cars. He asserts that "neither of them were speaking to Ernie. Ernie drove off. I thought the stop was over." (See ECF Doc. 41-3 at 1-2.). Thus John Sr., to this court, suggests that Ernie simply drove off from the traffic stop and he assumed that "the stop was over."

Again, this new recitation of facts is contradicted by John Sr.'s initial interview with Special Agent Mark Nickel. The summary of that interview notes that John Sr. told Agent Nickel that John Jr. "took off from the traffic stop" and drove home. (See Exhibit 2 at DEFENDANTS 0076.) In listening to John Sr.'s interview with the officer, John Sr. actually indicated "he just took off which he shouldn't have done." (See Exhibit 3.). Thus John Sr.'s statement to investigating officers on the day of the incident reflects that he knew his son had just "taken off" from a stop which "he shouldn't have done." John Sr.'s affidavit to this court attempts to recharacterize John Jr.'s actions at the scene to suggest he thought the traffic stop was simply over.

In an attempt to create disputed facts, the plaintiffs assert that Sergeant Raugust continued to utilize a chokehold after John Jr. was placed in handcuffs. Those assertions were not included in the complaint. Those assertions were not included in the affidavit of Sandra Prudente, despite the representation to this court to the contrary. Although those assertions are included in the affidavit of John Sr., they are contradicted by his prior statements to law enforcement as well as his interview with Special Agent Nickel. These contradictions are merely John Sr.'s attempt to raise a "sham issue of fact instead of a genuine one." Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365 (8th Cir. 1983); see also City of St. Joseph v. Southwestern Bell Telephone, 439 F.3d 468, 475-76 (8th Cir. 2006). These contradictions cannot be used to create a fact issue for purposes of avoiding summary judgment. Behle v. Harr, 2021 ND 190, ¶ 9, 965 N.W.2d 860 ("Litigants may not contradict themselves to manufacture factual disputes for purposes of avoiding summary judgment. Nor may litigants engage in legal maneuvering by denying or contradicting their prior sworn statements or by asserting positions inconsistent with

one they have previously asserted." (citations omitted)); <u>see also</u> 73 Am. Jur. 2d *Summary Judgment* § 57 ("A court may ignore [sworn statements] if it conflicts with the witness's earlier sworn statements and would create a sham factual issue.").

This matter has been pending for more than 22 months. The defendants filed a motion for summary judgment. To date, the plaintiffs have not attempted to conduct any depositions to further elicit facts that they believe would support their claim. Indeed, no such facts exist. The motion to seek additional discovery must fail because the affidavits have not demonstrated that the claimed facts actually exist and are essential to resist the motion for summary judgment.

## CONCLUSION

For the reasons outlined above, defendants respectfully request that the court deny the plaintiff's Rule 56(d) motion and rule on the pending motion for summary judgment.

Dated this 7th day of December 2023.

> KING LAW PC
> *Attorneys for Defendants*
> 101 Slate Drive, Suite 4
> Bismarck, ND 58503
> 701-712-2676
> lking@KingLawND.com
>
> By:  /s/ Lawrence E. King
>         Lawrence E. King (ID #04997)